# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 10, 2006

## STATE OF TENNESSEE v. JERALD M. SEAY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-01088     Arthur T. Bennett, Judge**

---

**No. W2005-01152-CCA-R3-CD  - Filed March 3, 2006**

---

The defendant, Jerald M. Seay, was found guilty by a Shelby County jury of unlawful possession of cocaine with intent to sell and unlawful possession of cocaine with intent to deliver, Class C felonies. After merging the two counts together into a single conviction for unlawful possession of cocaine with intent to sell, the trial court sentenced the defendant as a Range II, multiple offender to ten years in the Department of Correction and fined him $2,000.  On appeal, he argues: (1) the evidence was insufficient to support his conviction; and (2) the trial court erred in allowing him to be impeached with stale convictions.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Robert Wilson Jones, Shelby County Public Defender; William Robilio, Assistant Public Defender (at trial); and Garland Ergüden, Assistant Public Defender (on appeal), for the appellant, Jerald M. Seay.

Paul G. Summers, Attorney General and Reporter; Leslie Price, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lora Fowler and Alexia Fulgham, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On February 7, 2002, the defendant was indicted by the Shelby County Grand Jury for sale of a controlled substance, to wit: cocaine (Count 1); unlawful possession of a controlled substance (cocaine) with intent to sell (Count 2); and unlawful possession of a controlled substance (cocaine) with intent to deliver (Count 3).  These indictments were the result of a drug transaction with an undercover police officer that took place on February 7, 2001, at the Admiral Benbow Inn in

Memphis. Officer Eric Kelly, of the Memphis Police Department's Central Precinct Plain Clothes Task Force, testified that he was at the hotel that day because police had received "numerous complaints about drug activity in that area." Kelly said when he pulled into the hotel parking lot, the defendant approached him and a "general conversation" ensued between them. Kelly described what happened next:

> I then asked [the defendant] general questions of I believe the words I used were do you have any, and he at that time produced a rock, or what appeared to be a rock from his mouth.
>
> I gave him a twenty-dollar bill[1] out of pocket, and I proceeded to tell him that I had -- the words that I used was I had a freak[2] coming, and that I needed to get a little bit more so that we could party, and he said that he could take care of me.

After this exchange, Kelly rented a hotel room where he waited for the defendant to arrive. As the defendant approached the room, Kelly "gave the take-down signal" to other officers waiting nearby. As the officers started to close in, the defendant "began to run." The officers "chased [the defendant] to a vehicle where he was observed to throw what appeared to be three more rocks of cocaine into his mouth." After the defendant was arrested, "[t]he $20 that [Kelly] had given him was recovered from his pocket." Kelly said no drug paraphernalia was recovered from the defendant or his car. He also said the defendant did not appear to be under the influence of any intoxicant.

On cross-examination, Kelley acknowledged that the $20 used in the drug transaction was spent because it was his personal money and explained that he has only used his own money "five or six times" out of several hundred arrests. He also acknowledged that although he was wearing a wire, the drug transaction was not recorded.

Tara Barker, a special agent forensic scientist with the Tennessee Bureau of Investigation Crime Laboratory, testified that the rock-like substance Officer Kelly received from the defendant "contained cocaine schedule two in the amount of 0.1 grams."

The defendant testified that on the day in question he had a hotel room at the Admiral Benbow Inn and was just "[l]ooking for a woman to have some fun with." The defendant said he had only "[o]ne little piece of crack could have got two hits off of." Around 7:00 p.m., the defendant saw Officer Kelly, who "started a little conversation with [the defendant] like, you know, he wasn't no police and all that there. This was going to be females come through, and we was going to be

---

[1]Kelly used his own money to buy the cocaine and explained that he marked it by placing "a small mark in each one of the corners."

[2]Kelly explained that "freak" is a street term used to describe a woman who would be in the room for sex. Kelly used the term because it made for a "more believable story, and it was a way for [Kelly] to see if [the defendant] had anything else. If he knew [Kelly] had a girl or somebody else coming, he would be more apt to produce if he did have any other drugs on him."

able to have some fun if [the defendant] g[o]t some drugs there." The defendant said that, when he arrived at Kelly's room, he got "[k]ind of sacred" because he did not see any women and started walking away "kind of fast" because he realized Kelly was a police officer who had gotten him "in a setup situation." The defendant denied swallowing the crack because "[y]ou can bust your heart swallowing crack." Instead, the defendant said he "tossed [the crack] to the side like, and [Kelly] picked it up off the ground." The defendant denied selling Kelly any crack cocaine or receiving $20 from the officer.

At the conclusion of the trial, the jury found the defendant not guilty of Count 1 (sale of cocaine) but guilty of Count 2 (unlawful possession of cocaine with intent to sell) and Count 3 (unlawful possession of cocaine with intent to deliver). At sentencing, the trial court merged Count 3 into Count 2 and sentenced the defendant to ten years in the Department of Correction.

## ANALYSIS

### I. Sufficiency of the Evidence

On appeal, the defendant argues that the evidence was insufficient to support his conviction, saying "the State failed to carry its burden of proving beyond a reasonable doubt that he is guilty of an offense greater than simple possession of a controlled substance." The State argues the evidence was more than sufficient to support the defendant's conviction. We agree with the State.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To obtain a conviction in this case, the State was required to show beyond a reasonable doubt that the defendant possessed cocaine with the intent to sell it. See Tenn. Code Ann. § 39-17-417(a)(4) (Supp. 2005). Simple possession of cocaine would have required the State to show beyond a reasonable doubt that the defendant knowingly possessed cocaine. See Tenn. Code Ann. § 39-17-418(a) (2003). The defendant concedes in his brief that "[i]t is undisputed that [he] was in possession of crack cocaine." He maintains, however, that "[t]he conviction for sale of cocaine rests solely upon Officer Kelly's assertion that he gave [the defendant] $20 for a minuscule rock of cocaine weighing . . . 0.1 grams" and notes that he "disputed having taken money from Officer Kelly" and claims "that he expected to 'party' with the women Kelly had summoned in exchange for sharing his rock of cocaine." Despite these assertions, the jury obviously gave more credence to Officer Kelly's testimony than the defendant's. The trial court instructed the jury that it could find the defendant guilty of the lesser-included offense of simple possession but, as its verdict indicated, the jury decided to reject this option and convict the defendant of possession of cocaine with intent to sell, which is its prerogative to do. The evidence, viewed in a light most favorable to the State, more than supports the jury verdict. Accordingly, this issue is without merit.

## II. Impeachment of Defendant by Prior Convictions

The defendant also argues the trial court erred by allowing him to be impeached with prior convictions that were more than ten years old. Prior to the defendant's trial, the State filed a Notice of Impeaching Convictions Pursuant to Tennessee Rule of Evidence 609(a) stating its intention to impeach the defendant with the following prior convictions:

| Date | Nature of Conviction/Class/Sent. |
|---|---|
| 3-10-04 | Criminal Impersonation/ Misd/ 8days |
| 5-17-92 | Crim Att. Poss. of Cont. Sub w/I to M/D/S/ Felony / 4 years |
| 5-21-90 | Selling a Cont. Sub./ Felony/ 4 years |
| 6-7-88 | Grand Larceny/ Felony/ 3 years |
| 6-7-88 | Larceny from Person/ Felony/ 3 years |
| 6-7-88 | Larceny from Person / Felony/ 3 years |

Prior to the start of the trial, the court ruled that the State would be allowed to impeach the defendant with the three larceny convictions and the criminal impersonation conviction. The trial court explained why the 1988 larceny convictions could be used for the purpose of impeachment if the defendant testified:

The Court since these [larceny convictions] -- since this is just beyond the ten-year period that he was released from custody[3] on three separate cases directly dealing with his credibility-type offenses, theft of property or larceny, the Court may in the event he testifies, ask about those, taking in consideration that he has not had a span where he's clean of any criminal offenses in between, and there's some specific circumstances. He has not been -- let's say that those offenses were committed he came out about ten and a half years, so many years, and then got this ten years later, this case, but in between he has no offenses, hasn't been violating, I wouldn't let you ask that been too far [sic]. He [has] been clean all that time.

But, apparently, in between he's got convictions of other things, and those are specific circumstances. I'll allow you to ask.

This issue is governed by Tennessee Rule of Evidence 609, which provides that a conviction may be used to impeach the testimony of an accused in a criminal prosecution if the following four conditions are satisfied: (1) the conviction is for a crime punishable by death or imprisonment in excess of one year, or the conviction is for a misdemeanor which involved dishonesty or false statement; (2) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the subject prosecution; (3) the State gives reasonable pretrial written notice of the particular conviction or convictions it intends to use as impeachment; and (4) the trial court concludes that the probative value of the prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609; State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999).

Additional safeguards are required if a conviction is more than ten years old, as the larcenies in this case were. Such convictions are only admissible if: (1) advance notice sufficient to provide the adverse party with a fair opportunity to contest the use of such evidence is given; and (2) the trial court determines that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. Tenn. R. Evid. 609(b). The trial court's decision to admit prior convictions for impeachment purposes will not be reversed on appeal unless it appears from the record that the trial court abused its discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

In his brief, the defendant argues:

The record contains no indication that the trial judge actually conducted the required careful balance to determine whether the extremely prejudicial effect of the stale convictions . . . substantially outweighed their probative value. Although the trial court used the phrases "specific circumstances" and "convictions of other

---

[3]The State noted that the defendant was "released on parole on these three larceny convictions January 26th of 1991, and he picked up this present offense February of 2001."

things," the record does not reflect the specific facts and circumstances he relied upon to justify admission of the prior convictions.

The State responds that the trial court correctly noted "that the 1988 convictions were just beyond the ten-year period and that the offenses directly dealt with [the defendant's] credibility."

In State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003), our supreme court noted that "[t]wo criteria are especially relevant in determining whether the probative value of a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues: (1) the impeaching conviction's relevance as to credibility; and (2) the impeaching conviction's similarity to the charged offense." Although the trial court did not explain, in detail, how the probative value of the 1988 larceny convictions did not outweigh their prejudicial effect, it is obvious that these two criteria are met in this case. The trial court correctly noted that the larceny convictions were "credibility-type offenses." See Neil P. Cohen et al., Tennessee Law of Evidence § 6.09[4][b] (4th ed. 2000) ("crimes involving dishonesty include robbery, larceny from the person, transporting a stolen vehicle in interstate commerce, shoplifting, burglary, grand larceny, petit larceny, theft, stealing, concealing stolen property"). In addition, the defendant was facing drug charges, offenses very dissimilar to the larceny convictions. Accordingly, we cannot conclude that the trial court abused its discretion in allowing the defendant to be impeached by the 1988 larceny convictions.

Even accepting *arguendo* that the trial court erred in admitting the convictions, we also agree with the State that "the error was harmless at most and had absolutely no impact on the jury's verdict in light of the evidence of guilt presented at trial." As we explained above, the evidence in this case was more than sufficient to convict the defendant for unlawful possession of cocaine with the intent to sell. Thus, if the court erred by this evidentiary ruling, the error was harmless. Accordingly, this issue is without merit.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE